OPINION
{¶ 1} Defendant-appellant, Gregory L. Grimm, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, ruling that his antenuptial agreement was unenforceable.
 {¶ 2} Appellant and his wife, Terri A. Grimm ("Mrs. Grimm"), lived together in a house owned by appellant for more than a year before their marriage. Mrs. Grimm paid rent to appellant during the time that the couple lived together. Three months before the marriage, Mrs. Grimm began chemotherapy and radiation treatments for breast cancer. Four days before the wedding, the couple met with appellant's attorney in the attorney's office and executed an antenuptial agreement at appellant's behest. The couple married on March 21, 1992.
 {¶ 3} Mrs. Grimm filed for legal separation in 2000, which was eventually amended to a complaint for divorce. A hearing was held and the trial court issued its decision, granting the divorce on March 27, 2002. The trial court ruled that the antenuptial agreement was unenforceable based upon its finding that Mrs. Grimm had not entered into the agreement voluntarily.
 {¶ 4} Appellant appeals and raises three assignments of error. All three assignments contest the trial court's decision that the antenuptial agreement was unenforceable. This determination by the trial court resulted in the trial court awarding Mrs. Grimm half of the marital equity in the house and half of the coverture fraction of appellant's pension plan. We address the three assignments together.
 {¶ 5} Appellant argues under all three assignments of error that, contrary to the trial court's findings, the antenuptial agreement should have been enforced because the evidence demonstrated that the parties entered the agreement freely, without fraud, duress, coercion, or overreaching, with full knowledge of the nature, value, and extent of appellant's property.
 {¶ 6} A prenuptial or antenuptial agreement determines the distribution of assets and is entered into so that the assets owned by each party remain theirs when the marriage terminates. Fletcher v.Fletcher, 68 Ohio St.3d 464, 466, 1994-Ohio-434. An antenuptial agreement that is freely and voluntarily entered into will not be invalid because it makes a disproportionate distribution. Id., citing Juhasz v. Juhasz
(1938), 134 Ohio St. 257, paragraph four of syllabus.
 {¶ 7} Determining whether an antenuptial agreement was entered into voluntarily is measured by three factors: (1) whether there was full disclosure or full knowledge of the nature, value, and extent of the prospective spouse's assets; (2) whether it was entered into without fraud, duress, coercion or overreaching; and (3) whether it promotes divorce or profiteering by divorce. Wiethe v. Beaty (Feb. 16, 1999), Warren App. No. CA98-04-049.
 {¶ 8} The party claiming the validity of an antenuptial agreement bears the burden to show that there was full disclosure or full knowledge of the assets. Id., citing Hook v. Hook (1982), 69 Ohio St.2d 234, 235. Whether there is full disclosure or knowledge is based on the totality of the circumstances. Juhasz, 134 Ohio St. at paragraph three of the syllabus.
 {¶ 9} Factors to consider in determining whether there was adequate disclosure of assets include the amount of time Mrs. Grimm spent with appellant, and how familiar she was with appellant's family relationships, employment, and financial dealings. Stewart v. Harney
(Mar. 7, 1988), Warren App. No. CA87-80-060.
 {¶ 10} Once the burden of showing full disclosure is met, the burden shifts to the party attacking the antenuptial agreement to show that the agreement was entered into fraudulently, under duress or coercion, or involved overreaching. Fletcher, 68 Ohio St.3d at 467. Overreaching is defined as one party outwitting or cheating the other "by artifice or cunning, or by exploiting a significant disparity in understanding the nature of the transaction." Id.
 {¶ 11} The trial court found that Mrs. Grimm did not enter into the agreement voluntarily. The trial court's findings emphasized the lack of disclosure before signing the agreement, as well as other factors in making its decision.
 {¶ 12} The trial court noted that appellant made it clear to Mrs. Grimm that signing the agreement was a condition precedent to the marriage, and that appellant's lawyer prepared the document at appellant's request. The trial court also found that the agreement contained no written disclosure of assets, and that Mrs. Grimm denied appellant's assertion that he discussed his assets with her. Evidence was adduced that Mrs. Grimm did not have, nor did she seek, her own legal counsel to explain the agreement.
 {¶ 13} The trial court noted that Mrs. Grimm testified that she skimmed the document, had no understanding of the significance of the agreement, and "would have signed anything in order to make [appellant] happy and to ensure the marriage." The trial court found that appellant's attorney had no independent recollection of the financial disclosures that may have taken place and had only assumed that full disclosure of assets was made. The trial court further noted that sections of the antenuptial agreement were "confusing and difficult to understand."
 {¶ 14} Appellant argues that he had only two assets to disclose in the agreement. Those two assets were his house in Fairfield and his pension with General Electric. Appellant contends that Mrs. Grimm was fully aware of the existence and value of these two assets before she signed the antenuptial agreement. Mrs. Grimm testified that she "probably" told appellant's attorney that appellant informed her about his assets.
 {¶ 15} On cross-examination, Mrs. Grimm acknowledged that she was aware that appellant owned the house and that appellant would have a pension. However, Mrs. Grimm testified that she did not know exactly what appellant's assets were when she signed the document.
 {¶ 16} This court will uphold the trial court's findings when the record contains some competent evidence to sustain the trial court's conclusions. Fletcher, 68 Ohio St.3d at 468. The trial judge was in the best position to view the witnesses, observe their demeanor, gestures, voice inflections and use these observations in weighing the credibility of the proffered testimony. Winter v. Winter (1995), 102 Ohio App.3d 792, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77 at 80.
 {¶ 17} The trial court's determination that Mrs. Grimm did not voluntarily enter into the agreement was supported by competent and credible evidence as outlined above. Winter at 797; see Zimmie v. Zimmie
(1984), 11 Ohio St.3d 94. Accordingly, the trial court did not err in ruling that the antenuptial agreement was unenforceable.
 {¶ 18} Based upon the determination that the antenuptial agreement was unenforceable, the trial court's award to Mrs. Grimm of half of the marital portion of the equity of the house and in appellant's pension was not an abuse of discretion. R.C. 3105.171(A)(3)(a)(i) and (iii); Biskerv. Bisker, 69 Ohio St.3d 608, 609, 1994-Ohio-307 (trial court has broad discretion to fashion division of marital property); Middendorf v.Middendorf, 82 Ohio St.3d 397, 401, 1998-Ohio-403 (decision regarding property division not reversed absent an abuse of discretion). Appellant's three assignments of error are overruled.
Judgment affirmed.
POWELL, J., concurs.
WALSH, P.J., dissents without written opinion.